**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF KENTUCKY**
**OWENSBORO DIVISION**

CIVIL ACTION NO. 4:09-CV-00094-JHM

GROUPWELL INTERNATIONAL (HK) LIMITED,                    PLAINTIFF

V.

GOURMET EXPRESS, LLC                                              DEFENDANT

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Plaintiff Groupwell International (HK) Limited's Motion

for Partial Summary Judgment on Defendant's Counterclaims [DN 55] and Motion for Protective

Order [DN 58] and Defendant Counter-claimant Gourmet Express, LLC's Motion for Relief Pursuant

to Fed. R. Civ. P. 56(d) and 54(b) [DN 59] and Motion to Compel Discovery [DN 63].  Fully briefed,

these matters are ripe for decision.

### I. BACKGROUND[1]

This controversy arises out of a contract dispute between Groupwell, a seller of frozen

seafood and vegetables, and Gourmet, a manufacturer of frozen dinners.  Groupwell filed suit against

Gourmet alleging breach of contract on September 25, 2009.  On November 8, 2010, Gourmet filed

its Second Amended Answer and Counterclaims against Groupwell alleging that Groupwell, along

with two former Gourmet executives, Robert Scully and Kevin Scully, conspired to overcharge

Gourmet for its products through the use of fraudulent invoices.  The Scullys would then approve the

fraudulent invoices and cause Gourmet to pay the invoices.  The overcharge that was received by

Groupwell was then redistributed in the form of a kickback to the Scullys and members of their

families.

---

[1] These facts are taken in the light most favorable to the non-movant, Gourmet.

Similar claims were alleged against the Scullys in an earlier lawsuit by Ken Sliz. Sliz and the Scullys were part owners of Gourmet in 2007 when the Scullys and Gourmet filed suit against Sliz in Bexar County, Texas District Court. Sliz answered the complaint and counterclaimed, individually and derivatively on behalf of Gourmet, alleging that the Scullys were part of a fraudulent invoice self-dealing scheme involving Siam Star Seafood, N&D International business Consultants, Ltd., N&DD, and Groupwell International (HK) Limited. While the counterclaims discussed these several business entities, none of the entities were ever made a party to the suit.

After the Texas lawsuit was filed, Gourmet filed a Chapter 11 Bankruptcy Petition in the United States Bankruptcy Court for the Western District of Texas in August 2007. At some point, Ilex Capital Group, LLC was contacted about potentially purchasing Sliz's interest in Gourmet. Ilex eventually agreed to purchase a controlling share in Gourmet. As part of this agreement, the parties to the Bexar County, Texas lawsuit agreed to enter into a Settlement Agreement releasing their respective claims against one another.

The Settlement Agreement was executed on January 25, 2008. The Settlement Agreement explicitly identified Robert Scully, Nuchanat Scully, Kevin Scully, Terumi Scully, James Scully, Sharon Scully, Kenneth Sliz, Laurene Sliz, Gourmet Express, LLC, S&S Sourcing and Marketing, LLC, Commodity Packing and Trading Co., Ltd., and BKK Properties, Ltd. as the "Parties" to the Settlement Agreement. The Settlement Agreement also identified Groupwell International (HK) Limited and several other entities as non-parties. Under the Settlement Agreement, the Parties agreed to release all existing and potential claims against one another. The Slizs and Groupwell also agreed to release all existing and potential claims against one another. After execution of the Settlement Agreement, the Scullys, Sliz, and Gourmet filed an Agreed Order of Dismissal with Prejudice in the Bexar County, Texas District Court. The Order was entered on January 30, 2008, and the case was

2

dismissed.

In the instant case, Gourmet's counterclaims against Groupwell alleging fraud and civil conspiracy, among other things, are based upon the same factual basis as the counterclaims that Ken Sliz brought individually and on behalf of Gourmet in the Bexar County, Texas lawsuit. Gourmet additionally alleges that Groupwell misrepresented its true management and was a party to the fraudulent invoices charged to Gourmet. Groupwell has now moved for partial summary judgment on these claims.

## II. STANDARD OF REVIEW

Before the Court may grant a motion for summary judgment, it must find that there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial burden of specifying the basis for its motion and of identifying that portion of the record which demonstrates the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Once the moving party satisfies this burden, the non-moving party thereafter must produce specific facts demonstrating a genuine issue of fact for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).

Although the Court must review the evidence in the light most favorable to the non-moving party, the non-moving party is required to do more than simply show there is some "metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). The rule requires the non-moving party to present specific facts showing that a genuine factual issue exists by "citing to particular parts of materials in the record" or by " showing that the materials cited do not establish the absence . . . of a genuine dispute[.]" Fed. R. Civ. P. 56(c)(1). "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving

3

party]." <u>Anderson</u>, 477 U.S. at 252.

## III. DISCUSSION

### A. Groupwell's Motion for Partial Summary Judgment

Plaintiff Groupwell has moved for partial summary judgment as to Defendant Gourmet's counterclaims contending that the claims are barred by an earlier release contained in the Settlement Agreement executed in the Bexar County, Texas lawsuit. Alternatively, Groupwell contends that it is entitled to summary judgment based upon the doctrine of res judicata.

### 1. Release Through Settlement Agreement

The Settlement Agreement at issue in this case was created to resolve the earlier Bexar County, Texas lawsuit between the Scullys and the Slizs. Groupwell contends that the Settlement Agreement released any claims against Groupwell based on conduct of Groupwell on or before January 25, 2008, the effective date of the Settlement Agreement. As this case is based upon diversity jurisdiction, the Court would normally "apply the law, including the choice of law rules, of the forum state," Kentucky. <u>Himmel v. Ford Motor Co.</u>, 342 F.3d 593, 598 (6th Cir. 2003). However, the Settlement Agreement contains a choice of law provision which states that it is to be interpreted in accordance with Texas law. Neither party challenges the validity of this provision and both parties agree that Texas law controls the interpretation of the Settlement Agreement. Therefore, the Court will apply Texas state law to its analysis of the Settlement Agreement.

"Like any other agreement, a release is subject to the rules of construction governing contracts." <u>Baty v. ProTech Ins. Agency</u>, 63 S.W.3d 841, 848 (Tex. App. 2001). "The language in a contract is to be given its plain grammatical meaning unless doing so would defeat the parties' intent." <u>Id.</u> "[I]n construing a written contract, courts should examine and consider the entire writing in an effort to harmonize and give effect to all the provisions of the contract so that none will be

4

rendered meaningless." <u>McMahan v. Greenwood</u>, 108 S.W.3d 467, 491 (Tex. App. 2003). "The contract must be read as a whole, rather than by isolating a certain phrase, sentence, or section of the agreement." <u>Baty</u>, 63 S.W.3d at 848. "No single provision taken alone will be given controlling effect; rather, all the provisions must be considered with reference to the whole instrument." <u>McMahan</u>, 108 S.W.3d at 491.

"If the written instrument is so worded that it can be given a certain or definite legal meaning or interpretation, then it is not ambiguous and the court will construe the contract as a matter of law." <u>Coker v. Coker</u>, 650 S.W.2d 391, 393 (Tex. 1983). However, when a contract's meaning is uncertain or reasonably susceptible to multiple interpretations, it is ambiguous. <u>Id.</u> Whether a contract is ambiguous is question of law for the court to decide. <u>R & P Enter. v. LaGuarta, Gavrel & Kirk, Inc.</u>, 596 S.W.2d 517, 518 (Tex. 1980). "When a contract contains an ambiguity, the granting of a motion for summary judgment is improper because the interpretation of the instrument becomes a fact issue." <u>Coker</u>, 650 S.W.2d at 394.

When examining whether a release or settlement agreement is ambiguous, a "court must give effect to the true intentions of the parties as expressed in the written instrument." <u>Baty</u>, 63 S.W.3d at 848. In order to give the document such effect, "the court may examine prior negotiations and all other relevant incidents bearing on the intent of the parties." <u>Id.</u> During such an examination, "[i]t is appropriate to construe the release in light of the facts and surrounding circumstances as shown by the record." <u>Harton v. First Victoria Nat. Bank</u>, 2011 WL 1935605, at *3 (Tex. App. May 19, 2011). Ultimately, "[t]he court should construe a contract by considering how a reasonable person would have used and understood such language, considering the circumstances surrounding its negotiation and keeping in mind the purposes which the parties intended to accomplish by entering into the contract." <u>Baty</u>, 63 S.W.3d at 848.

In the instant case, Groupwell contends that the current counterclaims brought by Gourmet were released in the Settlement Agreement.  The Court finds that the Settlement Agreement is ambiguous, making its interpretation a question of fact for the jury to decide.  The Settlement Agreement begins by defining several entities as "Parties."  The "Parties" are clearly defined as Robert Scully, Nuchanat Scully, Kevin Scully, Terumi Scully, James Scully, and Sharon Scully (collectively referred to as the "Scully Parties"); Kenneth Sliz and Laurene Sliz (collectively referred to as the "Sliz Parties"); and the following companies: Gourmet Express, LLC, S&S Sourcing and marketing, LLC, Commodity Packing and Trading Co., Ltd., and BKK Properties, Ltd. (collectively referred to as "the Companies").  (Groupwell Second Mot. Partial Summ. J, Ex. D, Settlement Agreement 1-2 [DN 55].)  Noticeably absent from this definition is Groupwell.  Rather than list Groupwell as a Party, the Settlement Agreement states that "Sliz and certain non-parties to the litigation named Groupwell International (HK), Limited, N&D International Business Consultants, Ltd. ("Mauritius"), [] and Siam Star Seafood Company, Ltd. (collectively the "Groupwell Entities") wish to enter into mutual releases."[2]  (Id. at 2.)

The ambiguity begins with the definition of "All Claims" in paragraph 6(c).  Under the Settlement Agreement, "All Claims" means "all claims and causes of action that have been or could have been raised in the Lawsuit for all existing, past, and future damages and injuries, whether known and unknown, *that exist between the Parties* at the time of the Agreement."  (Id. at 6(c) (emphasis added).)  This definition only covers those claims that exist between the Parties, a term specifically defined to exclude Groupwell.  "All Claims," by its definition, does not include claims between the Parties and the Groupwell Entities who are defined as non-parties.  Nevertheless, in paragraph 6(d)

---

[2] This paragraph originally included N&DD International (Thailand) Co., Ltd. as a non-party to the agreement.  However, that entity was struck from the agreement.

of the Settlement Agreement, Sliz releases, acquits, and forever discharges "from All Claims . . . the Groupwell Entities."  (Id. at 6(d).)  If this provision is read literally, it has no meaning because there are no claims between Sliz and Groupwell that fall within the definition of "All Claims."[3]

Notwithstanding the problem with the definition of "All Claims," the Court finds that there is ambiguity concerning which claims Sliz is releasing in paragraph 6(d).  Paragraph 6(a) of the Settlement Agreement acknowledges that Sliz brought claims against the Scullys individually and derivatively on behalf of Gourmet.[4]  However, in the paragraph related to Sliz's release, paragraph 6(d), it simply states that Sliz is releasing several entities, including Groupwell, from "All Claims." It is unclear if Sliz is individually and derivatively releasing the parties named in paragraph 6(d), or simply acting in an individual capacity.

Groupwell contends that paragraph 6(d) must include Sliz's release of the derivative claims brought on behalf of Gourmet because those were the only claims that Sliz could have brought against Groupwell.  It is unclear if this is true, as there could very well have been individual claims against Groupwell such as tortious interference with a business contract.  In fact, Sliz could have filed any number of individual claims against Groupwell, even if such claims were likely to fail.  The purpose of this Settlement Agreement could have been to preclude all future litigation between Sliz and Groupwell, not just litigation that had a high probability of success.[5]

---

[3] The same defect is present in Groupwell's release of the Slizs from "All Claims" in paragraph 6(f).

[4] This paragraph again noticeably excludes mention of Groupwell, as Sliz only brought individual and derivative claims against the Scullys themselves.

[5] This interpretation is buttressed by paragraph 6(i)(i) which states that the "Settlement Agreement may be pleaded in bar of any suit or action brought or taken in violation of this covenant" and that "[t]he prevailing party shall be entitled to attorney's fees and expenses in any suit in which this Settlement Agreement is specifically and successfully pleaded as a defense to

Another potential problem with Groupwell's interpretation of paragraph 6(d) is Gourmet's own release in paragraph 6(g). In paragraph 6(g), Gourmet specifically releases the Scullys. However, the only claims that Gourmet had asserted against the Scullys were those done so by Sliz derivatively. If Sliz's release in paragraph 6(d) truly included his derivative claims against Groupwell and the Scullys, then there would be no claims against the Scullys for Gourmet to release in paragraph 6(g). Yet, the drafters of the Settlement Agreement intentionally included a paragraph whereby Gourmet released claims against the Scullys that had only been asserted derivatively by Sliz. This conundrum leads to a second interpretation related to paragraphs 6(d) and (g); namely that paragraph 6(d) was a release of Sliz's individual claims, while paragraph 6(g) was a release of Gourmet's claims brought by the Scullys and the Slizs against one another. The Court is unable to determine which of these interpretations represents the true intent of the drafters of the Settlement Agreement. This ambiguity makes the interpretation of the Settlement Agreement a question of fact, which precludes an entry of summary judgment.

The Court finds further ambiguity in paragraph 6(i)(v). Groupwell contends that this paragraph contains a general release that released all claims between Gourmet and Groupwell. Paragraph 6(i)(v) states in pertinent part that:

> The Parties fully understand that this Settlement Agreement is a full, complete, and final release and settlement of the claims and causes of action among them that fall within the definition of "All Claims," including claims related to transactions between the Companies and the Groupwell Entities.

The Court first notes that this paragraph is expressly limited to "the Parties" which does not include

---

any action brought in violation hereof[.]" That the agreement assesses a penalty of attorneys fees against a party who brings a claim that has already been released by the agreement demonstrates that the parties wanted to preclude all future litigation, especially litigation that fails.

Groupwell.  Therefore, on its face, this paragraph does not apply to Groupwell.  Setting that aside, the Court further finds the language "including claims related to transactions between the Companies and the Groupwell Entities" is subject to multiple interpretations.  One interpretation is that this language was included specifically to cover Groupwell and should be interpreted to mean the Parties are releasing all claims between the Companies and the Groupwell Entities.  However, another plausible explanation is that this language simply states that the Parties (Scullys, Slizs, and Companies) acknowledging that they are releasing one another from any claim that was founded upon fraudulent transactions between the Companies and Groupwell Entities.  It is unclear which of these interpretations reflects the true intent of the entities included within the Settlement Agreement.

Furthermore, the Court is unsure if paragraph 6(i)(v) was intended to be a full and complete release, as Groupwell contends it should be interpreted, or as a summation of the agreement.  If Groupwell's interpretation were accurate and paragraph 6(i)(v) releases all claims between all of the entities who joined in the Settlement Agreement, then what is the purpose of the individual releases contained in paragraphs 6(d)-(g)?  Under Groupwell's interpretation of these paragraphs would be superfluous and unnecessary.  However, the language of paragraph 6(i)(v) could be read as constituting a general release of all entities who were included within the agreement.  This ambiguity is precisely the reason that the interpretation of this Settlement Agreement should be left to a jury. The Court finds that there is a genuine dispute of material fact regarding whether the Settlement Agreement releases Groupwell from Gourmet's current counterclaims.  Accordingly, summary judgment is not appropriate.

## 2. Res Judicata

Groupwell's final argument is that the settlement of the Bexar County, Texas lawsuit and the entry of an agreed dismissal with prejudice bars the instant suit under the principles of res judicata.

Unlike the interpretation of the Settlement Agreement, this issue is controlled by Kentucky law.  "The doctrine of res judicata is a judicially created doctrine, which may be said to exist as an obvious rule of reason, justice, fairness, expediency, practical necessity, and public tranquility."  <u>Floyd Cnty. Bd. of Ed. v. Layne</u>, 474 S.W.2d 397, 398-99 (Ky. 1971) (quoting 46 Am. Jur. 2d, Judgments § 395). In order to invoke the doctrine of res judicata, a party must establish the existence of a final judgment rendered upon the merits, an identity of issues between the prior judgment and the instant suit, and an identity of parties.  <u>BTC Leasing, Inc. v. Martin</u>, 685 S.W.2d 191, 197 (Ky. Ct. App. 1984).

Groupwell contends that all three necessary elements are present in the instant suit and that the doctrine of res judicata should operate to bar Gourmet's counterclaims.  Gourmet contends that there was not a final judgment upon the merits in the Bexar County, Texas lawsuit and that there is not identity of parties.

"A voluntary dismissal with prejudice operates as a final adjudication on the merits and has a res judicata effect."  <u>Warfield v. AlliedSignal TBS Holdings, Inc.</u>, 267 F.3d 538, 542 (6th Cir. 2001); <u>see also</u> <u>Blevins v. Johnson</u>, 344 S.W.3d 375, 377 (Ky. 1961) ("In general, a judgment by agreement, consent or compromise bars a subsequent action on the same cause of action."); <u>3D Enter. Contracting Corp. v. Louisville and Jefferson Cnty. Metro. Sewer Dist.</u>, 174 S.W.3d 440, 448 (Ky. 2005) (finding a settlement agreement which stated that the parties wished to dismiss their claims with prejudice was sufficient to carry res judicata effect).

In the instant case, paragraph 6(h) of the Settlement Agreement states that "[t]he Parties agree that they shall cooperate in obtaining the dismissal of all of the Lawsuit with prejudice." Furthermore, an Agreed Order of Dismissal was entered in the Bexar County, Texas District Court on January 30, 2008, which states "IT IS THEREFORE ORDERED that all claims, counterclaims and third-party claims asserted in this lawsuit are DISMISSED WITH PREJUDICE."  (Groupwell

10

Second Mot. Partial Summ. J, Ex. F, Agreed Order of Dismissal 2 [DN 55].)  The Court finds that under Kentucky law, this settlement and agreed order of dismissal with prejudice is a final adjudication of the merits for purposes of res judicata analysis.

Gourmet also contends that Groupwell cannot claim protection under the doctrine of res judicata because it has failed to establish identity of parties.  Groupwell concedes that it was not a party to the prior action, but contends that if the current allegations against it are true, then it would be in privity with the Scullys such that there would be sufficient identity of parties.  Under the doctrine of res judicata, one who was not a party in a prior action can satisfy the identity of parties factor by establishing that he or she was in privity with a party to the prior action.  See BTC Leasing Inc., 685 S.W.2d at 197-98.  "While the concept of privity defies a precise, inflexible definition, a key consideration for its existence is the sharing of the same legal right by the parties allegedly in privity."  Id. at 198.  "[T]he absolute identity of legal interest is fundamental to a finding of privity and the mere fact that two parties are interested in proving or disproving the same facts will not create privity."  Id. (citing Newark Insur. Co. v. Bennett, 355 S.W.2d 303, 304 (Ky. 1962)).

In the instant case, Groupwell argues that the allegations against it, taken as true, demonstrate that Groupwell was in privity with the Scullys.  However, the Court disagrees and finds that even if taken as true, the allegations do not demonstrate privity because the Scullys and Groupwell do not share the same legal right.  Groupwell is a foreign corporation incorporated in Honk Kong.  When it was created in 2004, its sole shareholder was CEPA Impact Holdings Ltd., which is owned solely by Nataporn Phaengbutdee.  In 2008, CEPA transferred a 10% interest in Groupwell to Didier Delaval.  Groupwell contends that it has never had any employees or officers, and that its only director has always been CEPA.  There is no evidence or argument that the Scullys have a legal interest in Groupwell whatsoever, and while it may be true that the Scullys are secretly pulling the

11

strings that make Groupwell run, it cannot be said that the two have "an absolute identity of legal interest."  See BTC Leasing, Inc., 685 S.W.2d at 198.  Accordingly, the Court finds that res judicata is not applicable because there is not an identity of the parties.

Furthermore, the Court finds that the principles and interests underlying the doctrine of res judicata would preclude application of the doctrine in this case.  "[T]he position has been taken that the doctrine of res judicata is to be applied in particular situations as fairness and justice require, and that it is not to be applied so rigidly as to defeat the ends of justice or so as to work an injustice."  Floyd Cnty. Bd. of Ed., 474 S.W.2d at 398-99 (quoting 46 Am. Jur. 2d, Judgments § 395).  The

> application of the doctrine has been denied where the policies underlying the doctrine were not applicable to the peculiar facts involved, and where the circumstances presented a unique and nonrecurrent situation. . . .  In this respect it has been declared that res judicata, as the embodiment of a public policy, must at times be weighed against competing interests, and must on occasion, yield to other policies.

Id.  The Kentucky Supreme Court in Floyd found that

> [p]ublic policy, judicial orderliness, economy of judicial time, and the interest of litigants, as well as the peace and order of society, all require that stability should be accorded judgments, that controversies once decided on their merits shall remain repose, that inconsistent judicial decisions shall not be made on the same state of facts, and that there be an end to litigation which, without the doctrine of res judicata would be endless.

Id.

More recently, the Kentucky Court of Appeals has stated that "res judicata is justifiable by reference to two distinct policies: the public interest in bringing an end to litigation and the individual's interest in freedom from multiple and vexatious litigation of the same cause."  BTC Leasing, Inc., 685 S.W.2d at 198.  The doctrine should be applied as fairness and justice require and should not be "applied so rigidly as to defeat the ends of justice or so as to work an injustice."  Floyd Cnty. Bd. of Educ., 474 S.W.2d at 399 (quoting 46 Am. Jur. 2d, Judgments § 395).

The Court finds that the policies underlying the doctrine of res judicata would not be served by allowing Groupwell to invoke the doctrine.  The final judgment upon which Groupwell seeks to rely was the settlement of a lawsuit between business partners who have no legal stake in Groupwell. Groupwell has continuously denied any improper involvement with the Scullys.  Groupwell now seeks to take advantage of the settlement of that suit to bar claims against it by Gourmet.  Allowing Groupwell to use the dismissal created by the Settlement Agreement would not advance a public policy goal or judicial orderliness.  Nor is the doctrine necessary to free Groupwell from multiple and vexatious litigation of the same cause of action, as it is undisputed that Groupwell was never a party to the earlier lawsuit in Bexar County, Texas.

Furthermore, allowing the instant suit to go forward will not result in inconsistent judgments made upon the same state of facts.  Although the Bexar County, Texas lawsuit was voluntarily dismissed with prejudice based upon the execution of the Settlement Agreement, the agreement explicitly states that it "shall not be construed as an admission of liability or concession on the part of any Party, but rather shall be deemed part of a compromise and settlement of doubtful and disputed claims[.]" (Groupwell Second Mot. Partial Summ. J, Ex. D, Settlement Agreement ¶ 6(i)(ii) [DN 55].)  As that suit ended without a finding of liability there is no fear that the current suit could result in an inconsistent finding.  Accordingly, the Court finds that the principles and interests underlying the doctrine of res judicata would not be served by its application to the instant facts, and that the doctrine is not applicable.  See BTC Leasing, Inc., 685 S.W.2d at 198 (finding res judicata not applicable where its application would not further the doctrine's underlying interests).

Having found that there is a genuine dispute of material fact regarding the interpretation of the Settlement Agreement and that the doctrine of res judicata is inapplicable to the facts of this case, the Court finds that summary judgment is not appropriate, and **DENIES** Groupwell's motion.

13

**B. Gourmet's Motion for Relief**

Having denied Groupwell's motion for partial summary judgment, the Court finds that Gourmet's motion for relief pursuant to Fed. R. Civ. P. 56(d) and 54(b) is moot, and **DENIES** that motion as such.

**C. Groupwell's Motion for Protective Order**

Groupwell has filed a motion for protective order seeking to preclude Gourmet from conducting discovery relevant to activities that occurred prior to the execution of the Settlement Agreement on January 25, 2008.  In its motion Groupwell argues that because Gourmet's claims related to pre-January 25, 2008, activity are barred by the Settlement Agreement and res judicata, that discovery related to those claims should likewise be barred.  However, Groupwell concedes that "[i]f the Court does not enter partial summary judgment dismissing those claims, Groupwell's Motion for a Protective Order is moot."  (Groupwell's Reply 7 [DN 65].)

Under Fed. R. Civ. P. 26(c)(1)(D), the "Court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense [by] forbidding inquiry into certain matters, or limiting the scope of disclosure or discovery to certain matters."  The good cause upon which Groupwell relies is a relevancy argument based upon the anticipated dismissal of Gourmet's counterclaims.  However, as the Court has denied Groupwell's motion for partial summary judgment, the discovery is now relevant to Gourmet's counterclaims. Therefore, the Court finds that Groupwell's motion for protective order does not demonstrate good cause and **DENIES** Groupwell's motion.

**D. Motion to Compel**

Gourmet has filed a motion to compel discovery requesting that the Court order Groupwell

14

to more fully respond to Gourmet's discovery requests submitted to Groupwell on January 5, 2011, and to pay the reasonable attorneys fees incurred in submitting the motion to compel.  The discovery at issue is Plaintiff Groupwell's Responses to Defendant Gourmet's Third Set of Interrogatories, Requests for Production of Documents and Fourth set of Requests for Admissions.  Gourmet contends that Groupwell failed to fully respond to Interrogatories Nos. 23, 25, 29, 30, 31, 34, 35, 36, 37, 40, 41, 42, 43 & 44 and Request for Production of Documents Nos. 15, 16, 17, 18 & 19.

Groupwell objected to the above identified discovery requests on several grounds.  Groupwell universally objected to the discovery requests to the extent that they sought information regarding any events prior to January 25, 2008.  Groupwell objected claiming that the information that was sought was not relevant under Fed. R. Civ. P. 26(b).  It based this objection on its concurrent motion for partial summary judgment dismissing Gourmet's counterclaims.  As discussed above, the Court has denied Groupwell's motion for partial summary judgment.  Therefore, Groupwell's general objection to the relevancy of such discovery is not well taken.  The Court will now address Groupwell's specific objections to the discovery requests.

"[T]he scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense . . . ."  Fed. R. Civ. P. 26(b)(1). "Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence."  Fed. R. Civ. P. 26(b)(1).

The Court observes that "[r]elevant material for the purpose of discovery will encompass any matter that may bear upon, or reasonably could lead to other matters that could bear upon, any issue that is or likely may be raised in the case."  Invesco Institutional, Inc. v. Pass, 244 F.R.D. 374, 380 (W.D. Ky. 2007) (citing Minch v. City of Chicago, 213 F.R.D. 526, 527 (N.D. Ill. 2003)).  Stated differently, "a request for discovery should be considered to be seeking relevant information if there

15

is *any* possibility that the information sought may be relevant to the claim or defense of any party in the action."  Id.  (emphasis in original) (citing Goodyear Tire & Rubber Co. v. Kirk's Tire & Auto Servicenter, 211 F.R.D. 658, 663 (D. Kan. 2003)).  Notably, "[t]he federal courts, even after the amendment of rule 26(b) in 2000, have continued to hold that, '[r]elevance for the purpose of rule 26 is broadly construed.'"  Id.  (quoting Jade Trading, LLC v. United States, 65 Fed. Cl. 188, 190-91 (2005)) (other citations omitted).

"When the discovery material sought appears to be relevant, the party who is resisting production has the burden to establish that the material either does not come within the scope of relevance or is of such marginal relevance that the potential harm resulting from production outweighs the presumption in favor of broad disclosure."  Id.  (citing Horizon Holdings, LLC v. Genmar Holdings, Inc., 209 F.R.D. 208, 211-12 (D. Kan. 2002)).

**Interrogatory No. 23**

Interrogatory No. 23 requests Groupwell to identify all bank accounts that it has used since its date of formation in 2004.  Groupwell responded to this interrogatory by identifying an account at HSBC Hong Kong Bank and an account at Standard Chartered Bank Hong Kong.  Groupwell did not produce any identifying information such as account numbers because it stated that the accounts "are well known to Gourmet, since it often wired money to these accounts."  (Pls.'s Mot. for Prot. Order, Ex. A Pl.'s Ans. to Def.'s Third Set of Interrog., Resp. to Requests for Prod. of Docs. and Fourth Set of Requests for Admissions 3 [DN 58] (hereinafter Groupwell's Answers).)   In its Response to Gourmet's Motion to Compel, Groupwell has attached invoices identifying the bank account numbers.  The Court finds that Groupwell has sufficiently identified its banks and answered Interrogatory No. 23.

16

**Interrogatory Nos. 25, 37, 40, 41, 42, 43, 44 and Request for Production No. 17**

Groupwell has objected to these discovery requests on the grounds that they seek financial information that is not properly discoverable.  In support of this argument, Groupwell cites <u>Ranney-Brown Distributors, Inc. v. E.T. Barwick Industries, Inc.</u>, 75 F.R.D. 3 (S.D. Ohio 1977).  In <u>Ranney-Brown</u>, the court addressed the discoverability of financial information under Fed. R. Civ. P. 26 and found that "[o]rdinarily, Rule 26 will not permit the discovery of facts concerning a defendant's financial status, or ability to satisfy a judgment, since such matters are not relevant, and cannot lead to the discovery of admissible evidence."  <u>Id.</u> at 5.

However, Gourmet cites to <u>Alvarez v. Wallace</u>, 107 F.R.D. 658, 661 (W.D. Tex. 1985), and contends that the "fact that certain information is also useful in executing a judgment does not render that information unsusceptible to discovery prior to judgment if it also tends to prove Plaintiffs' case in chief."  Gourmet argues that this information is discoverable because it is being sought to prove its case in chief.  Gourmet's counterclaims are centered around allegations that Groupwell engaged in fraud by altering invoices from its suppliers, overcharging Gourmet, and then redistributing the overcharged amounts to certain individuals, including Kevin and Robert Scully.  While Rule 26 may not provide for discovery of financial information for the purpose of satisfying a judgment, Gourmet is not seeking the financial information for such a purpose.  Therefore, the Court finds that the information is relevant and overrules Groupwell's objection.  Groupwell is ordered to supplement its Responses.

**Interrogatories Nos. 29, 30, 31, 34, 35, 36, 42, 43 and 44**

Groupwell contends that it has "provided complete answers regarding the <u>relevant</u> information sought, i.e., matters that occurred after January 25, 2008[,]" for the above identified discovery requests.  (Pl.'s Resp. 5 [DN 66] (emphasis in original).)  This objection is essentially an extension

of Groupwell's universal objection made in connection with its motion for partial summary judgment. As the Court has found that partial summary judgment is not appropriate and rejected Groupwell's universal objection, Groupwell's attempt to further argue that pre-January 25, 2008, information is irrelevant and undiscoverable is not well taken.  Therefore, the Court overrules this objection.

Groupwell argues that the information sought by Interrogatories Nos. 35, 42, 43 and 44 is irrelevant for other reasons and, therefore, not discoverable.  Interrogatory No. 35 requests Groupwell to identify monies paid by Groupwell or its officers, directors, employees, shareholders or members for the benefits of certain identified individuals thought to be involved in the alleged fraudulent scheme.  Interrogatory No. 42 requests Groupwell to identify the salary, benefits, or bonuses paid to each of Groupwell's employees, directors, officers, agents and contractors for each year since its formation in 2004.   Interrogatory No. 43 requests information associated with distributions, dividends, or other compensation paid by Groupwell.  Interrogatory No. 44 requests information regarding any loans issued by Groupwell to any person or entity since its formation in 2004.

While there may be valid objections to such discovery requests, relevance is not one of them. Gourmet's counterclaims allege a fraudulent overcharge/kickback scheme involving Groupwell's majority shareholder Nataporn Phaengbutdee (Robert Scully's sister-in-law) and Robert and Kevin Scully.  The record indicates a web of familial connection between the individuals associated with Groupwell, Gourmet, and Siam Star Foods, such that the information requested by the identified interrogatories is relevant to discovering the depth, involvement and damage associated with the alleged fraudulent scheme.  Groupwell's objection to Interrogatories No. 35, 42, 43 and 44 on relevancy grounds is not well taken.  Therefore, the Court overrules this objection and orders Groupwell to supplement its Responses.

18

**Requests Nos. 15, 17, 18 and 19**

Groupwell objects to Request Nos. 15, 18 and 19 contending that the "information is not discoverable under Rule 26(b) because it is not relevant to any claim or defense in this case." Groupwell argues that whether and how much its suppliers were paid by Groupwell is not relevant to its claim for breach of contract. However, Groupwell disregards the fact that this information is relevant to Gourmet's counterclaims. Throughout this opinion, the Court has discussed the alleged fraudulent scheme of overcharging Gourmet and then issuing kickbacks. The contracts, payments, invoices and records associated with Groupwell and its suppliers is relevant to Gourmet's counterclaims.[6] Therefore, the Court overrules this objection and orders Groupwell to supplement its Responses.

Groupwell further objects to Request Nos. 17, 18 and 19 contending that they are overly broad and unduly burdensome. Request No. 17 seeks Groupwell's financial records including accounting and bookkeeping records. Request No. 18 seeks all contracts entered into between Groupwell and its suppliers for the purchase of shrimp and other commodities. Request No. 19 seeks all contracts, purchase orders, invoices and payment records reflecting Groupwell purchases of shrimp and other commodities from the date of Groupwell's formation in 2004.

"A responding party must show specifically how each discovery request is burdensome and oppressive by submitting affidavits or offering evidence revealing the nature of the burden. The mere statement by a party that an interrogatory or request for production is overly broad, burdensome, oppressive and irrelevant is not adequate to voice a successful objection." In re Heparin Prod. Liab.

---

[6] While there may be individual records that are not relevant because they involve purchases from suppliers for an entity other than Gourmet, Groupwell has admitted that Gourmet accounted for at least 95% of its total business. (See Groupwell's Answers, Interrogatory No. 32, at 7.)

Litig., 273 F.R.D. 399, 410-11 (N.D. Ohio 2011) (internal quotation marks omitted) (internal citations omitted).   Good cause for refusing discovery "is not established solely by showing that discovery may involve inconvenience and expense."   Isaac v. Shell Oil Co., 83 F.R.D. 428, 431 (E.D. Mich. 1979).

> At the very least, where a party claims burdensomeness, it must explain why that is so. It should also propose alternatives, if such might be possible, that could enable some degree of production. Where a party explains the difficulties that compliance would create, the requesting party must be heedful, and not simply knee-jerk dismissive of those explanations.

In re Heparin, 273 F.R.D. at 411.

Groupwell argues that these requests represent a massive amount of documentation. Groupwell notes that from January 2007 through April 2009, there were 633 separate transactions between Groupwell and Gourmet, all of which would have accompanying invoices, purchase orders, and payment records.   Groupwell points out that this two year period comprises less than half of the period from which Gourmet has requested records.

Groupwell's bare assertion that there are a significant number of documents covered by the requests is not a sufficient showing of burdensomeness to garner protection from the Court. Groupwell has submitted no affidavits or evidence that such document production would be unduly burdensome.   Groupwell has not identified whether these records are kept electronically or in hard-copy paper format.   As far as the Court knows, these records could easily be produced in an electronic format.

Since there is a great deal of uncertainty surrounding the true nature and burden associated with the production of documents associated with Request Nos. 17, 18 and 19, the Court directs counsel to confer with one another and make a good faith effort to produce the requested documents in the most cost effective method possible.   Counsel are directed to submit a report summarizing their

efforts to develop a reasonable manner of production regarding the requested documents **no later than 14 days** from the entry of this Order.

**Request No. 16**

Request No. 16 requests that Groupwell produce its corporate records, including minutes, organizing documents, required public filings, and evidence of any and all transfers of ownership. In response to this request, Groupwell produced its Certificate of Incorporation, Articles of Association, and stock transfer documents, all of which totaled fifteen pages. In its Response to the Motion to Compel, Groupwell claims that it has "provided to Gourmet all of its formation documents . . . and stock transfer documents."

Gourmet argues that Request No.1 6 was not fully answered because it requested documents other than those provided. The Court can only assume that Gourmet believes Groupwell has failed to produce documents associated with its minutes and required public filings. It is unclear if any such documents even exist. Groupwell has not offered an objection to Request No. 16 other than its previously rejected universal objection. Therefore, to the extent such documents exist, the Court orders that Groupwell supplement its Response and produce its minutes and any required public filings.

**Attorneys Fees**

Gourmet has additionally requested that Groupwell be ordered to pay the reasonable attorneys fees that Gourmet has incurred in filing its Motion to Compel. Under Fed. R. Civ. P. 37, if a court grants a motion to compel,

> the court must, after giving an opportunity to be heard, require the party or deponent whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees. But the court must not order this payment if:

(i) the movant filed the motion before attempting in good faith to obtain the disclosure or discovery without court action;
(ii) the opposing party's nondisclosure, response, or objection was substantially justified; or
(iii) other circumstances make an award of expenses unjust.

Fed. R. Civ. P. 37(a)(5)(A).  If a motion to compel is granted in part and denied in part then it is within the court's discretion to apportion the reasonable expenses for the motion.  Fed. R. Civ. P. 37(a)(5)(C).

Groupwell contends that it should not be required to pay for the reasonable expenses incurred by Gourmet in filing the Motion to Compel because its objections and nondisclosures were substantially justified.  In the instant case, the award of reasonable expenses is within the Court's discretion.  The Court agrees with Groupwell and finds that Groupwell's objection of relevancy based upon its belief that it had been released from Gourmet's counterclaims was substantially justified.  Therefore, the Court finds that Gourmet is not entitled to its reasonable expenses incurred in filing this motion to compel and that each side should bear its own costs.

## IV. CONCLUSION

For the reasons set forth above, **IT IS HEREBY ORDERED** that Plaintiff Groupwell International (HK) Limited's Motion for Partial Summary Judgment on Defendant's Counterclaims [DN 55] is **DENIED**.

**IT IS FURTHER ORDERED** that Groupwell's Motion for Protective Order [DN 58] is **DENIED**.

**FURTHER** that Defendant Counter-claimant Gourmet Express, LLC's Motion for Relief Pursuant to Fed. R. Civ. P. 56(d) and 54(b) [DN 59] is **DENIED**.

**FURTHER** that Gourmet's Motion to Compel Discovery [DN 63] is **GRANTED IN PART**

22

and **DENIED IN PART**.

cc: counsel of record