UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
OWENSBORO DIVISION

CIVIL ACTION NO. 4:09-CV-00094-M

GROUPWELL INTERNATIONAL (HK) LIMITED                    PLAINTIFF

V.

GOURMET EXPRESS, LLC                                           DEFENDANT

### MEMORANDUM OPINION AND ORDER

      This matter is before the Court on Groupwell's Third Motion for Partial Summary Judgment [DN 90]. Also before the Court is Gourmet's Motion for Relief Pursuant to Fed. R. Civ. P. 56(d) [DN 99]. Fully briefed, these matters are ripe for decision. For the following reasons, Groupwell's motion for partial summary judgment is **GRANTED** and Gourmet's motion for relief is **DENIED**.

### I. BACKGROUND[1]

      This controversy arises out of a dispute between Groupwell, a seller of frozen seafood and vegetables, and Gourmet, a manufacturer of frozen dinners. On September 25, 2009, Groupwell filed suit against Gourmet alleging breach of contract. (Compl. [DN 1].) On February 2, 2010, Groupwell filed an Amended Complaint. (Am. Compl. [DN 14].) On November 8, 2010, Gourmet filed its Second Amended Answer and Counterclaims against Groupwell alleging that Groupwell, along with former Gourmet executives Robert Scully and Kevin Scully, conspired to overcharge Gourmet for products through the use of fraudulent invoices. (Ver. 2d Am. Answer to Am. Compl. & Countercls. [DN 49].) The Scullys would approve the fraudulent invoices and cause Gourmet to pay them. The overcharge that was received by Groupwell was redistributed in the form of a kickback to the Scullys and members of their families. (Id.) The factual basis for Gourmet's Second Amended

---

[1]These facts are taken in the light most favorable to the non-movant, Gourmet.

Answer was largely based on an indictment that was issued against the Scullys in the U.S. District Court for the Western District of Texas on July 7, 2010. (Indictment [DN 44-2].) A superseding indictment was issued against the Scullys on November 17, 2010. (Superseding Indictment [DN 59-6].)

Similar claims were alleged against the Scullys in an earlier lawsuit by Kenneth Sliz. Sliz and the Scullys were part owners of Gourmet in 2007 when the Scullys and Gourmet sued Sliz in Bexar County District Court, Texas. Sliz answered the complaint and counterclaimed, both individually and derivatively on behalf of Gourmet, alleging that the Scullys were part of a self-dealing fraudulent invoice scam involving Siam Star Seafood, N&D International Business Consultants, Ltd., N&DD, and Groupwell International (HK) Limited. (Def.'s Countercl. [DN 55-3].) While the counterclaims discussed these business entities, none of them were ever made a party to the Bexar County lawsuit.

After the Bexar County lawsuit was filed, Gourmet filed a Chapter 11 bankruptcy petition in the U.S. Bankruptcy Court for the Western District of Texas in August 2007. At some point, Ilex Capital Group was contacted about potentially purchasing Sliz's interest in Gourmet. Eventually, Ilex agreed to purchase a controlling share of the company. As part of the purchase agreement, the parties to the Bexar County suit agreed to enter a settlement agreement releasing their claims against one another. On January 23, 2008, the bankruptcy court approved Gourmet's Second Amended Disclosure Statement regarding its Plan of Reorganization. (Order Approving 2d Am. Disclosure Statement [DN 90-10].) Two days later, a Settlement Agreement was executed in Bexar County. (Sett. Agr. [DN 55-6].) An Agreed Order of Dismissal was filed  in that case soon thereafter. (Agreed Order [DN 55-8].)

2

On March 2, 2011, in this lawsuit, Groupwell moved for partial summary judgment based on the releases contained in the Settlement Agreement and the res judicata effect of the Agreed Order of Dismissal. (Pl.'s 2d Mot. for Partial Summ. J. [DN 55].) The Court denied that motion based on ambiguities in the Settlement Agreement and the inapplicability of the doctrine of res judicata with respect to the Agreed Order. (Mem. Op. & Order [DN 70].) Subsequently, on Groupwell's motion to bifurcate, the Court bifurcated the trial on the parties' intent regarding the Settlement Agreement and ordered that discovery be limited to issues surrounding that intent. The Court stayed Groupwell's obligations to respond to discovery on Gourmet's allegations of fraud. (Order [DN 83].)

Groupwell has now moved for partial summary judgment based on the res judicata effect of a different order–namely, the bankruptcy court's order of January 23, 2008 that approved Gourmet's Second Amended Disclosure Statement regarding its Plan of Reorganization. (Pl.'s 3d Mot. for Partial Summ. J. [DN 90].) In response, Gourmet has asked the Court to deny Groupwell's motion or, in the alternative, enter an order holding the resolution of the matter in abeyance until the first trial's conclusion. (Def.'s Mot. for Relief Pursuant to Fed. R. Civ. P. 56(d) [DN 99].)

## II. STANDARD OF REVIEW

Before the Court may grant a motion for summary judgment, it must find that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial burden of specifying the basis for its motion and identifying that portion of the record that demonstrates the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Once the moving party satisfies this burden, the non-moving party thereafter must produce specific facts demonstrating a genuine

issue of fact for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986).

Although the Court must review the evidence in the light most favorable to the non-moving party, the non-moving party must do more than merely show that there is some "metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). Instead, the Federal Rules of Civil Procedure require the non-moving party to present specific facts showing that a genuine factual issue exists by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence . . . of a genuine dispute[.]" Fed. R. Civ. P. 56(c)(1). "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." Anderson, 477 U.S. at 252.

### III. DISCUSSION

#### GROUPWELL'S THIRD MOTION FOR PARTIAL SUMMARY JUDGMENT [DN 90]

In its motion for partial summary judgment, Groupwell argues that the doctrine of res judicata bars Gourmet's claims as of January 23, 2008, the date when the bankruptcy court's confirmation order was entered. Further, Groupwell argues that Gourmet is judicially estopped from asserting its counterclaims because it did not identify them as assets in its bankruptcy. (Pl.'s Mem. in Supp. of its 3d Mot. for Partial Summ. J. [DN 90-1] 1.) The Court considers each of these arguments in turn.[2]

---

[2]As this case is based on diversity jurisdiction, the Court will analyze Groupwell's res judicata and judicial estoppel claims under Kentucky law. See Himmel v. Ford Motor Co., 342 F.3d 593, 598 (6th Cir. 2003) (noting that in diversity cases, federal courts normally "apply the law, including the choice of law rules, of the forum state").

4

### A.      Res Judicata

"The doctrine of res judicata is a judicially created doctrine, which may be said to exist as an obvious rule of reason, justice, fairness, expediency, practical necessity, and public tranquillity." Floyd Cnty. Bd. of Ed. v. Layne, 474 S.W.2d 397, 398 (Ky. 1971) (quoting 46 Am. Jur. 2d § 395, Judgments). In order to invoke the doctrine of res judicata, a party must establish the existence of a final judgment rendered upon the merits, an identity of parties, and an identity of issues between the prior judgment and the instant suit. BTC Leasing, Inc. v. Martin, 685 S.W.2d 191, 197 (Ky. App. 1984). The Sixth Circuit applies a four-part test that includes these elements. See Browning v. Levy, 283 F.3d 761, 771 (6th Cir. 2002) (noting that a claim is barred by res judicata if there is: "(1) a final decision on the merits by a court of competent jurisdiction; (2) a subsequent action between the same parties or their 'privies'; (3) an issue in the subsequent action which was litigated or which should have been litigated in the prior action; and (4) an identity of the causes of action").

Groupwell contends that all of the necessary elements are present in the instant suit and that the doctrine of res judicata should operate to bar Gourmet's counterclaims. Gourmet contends that Groupwell cannot rely on the application of res judicata because Groupwell fraudulently concealed information from Gourmet and because Gourmet adequately reserved its claims in its bankruptcy.

### 1.      Final Judgment Rendered Upon the Merits

As a general rule, the "[c]onfirmation of a plan of reorganization constitutes a final judgment in bankruptcy proceedings." Browning, 283 F.3d at 772 (quoting Sanders Confectionery Prods., Inc. v. Heller Fin., Inc., 973 F.2d 474, 480 (6th Cir. 1992)). Thus, a bankruptcy court's confirmation order "has the effect of a judgment by the district court and res judicata principles bar relitigation of any issues raised or that could have been raised in the confirmation proceedings." Id. (quoting *In*

re Chattanooga Wholesale Antiques, Inc., 930 F.2d 458, 463 (6th Cir. 1991)). Here, the bankruptcy court entered an order confirming Gourmet's reorganization plan on January 23, 2008. (See Order Approving 2d Am. Disclosure Statement [DN 90-10].) The Court finds that this order is a final judgment rendered upon the merits. Thus, the first element of res judicata is present in this case.[3]

### 2.      Identity of Parties

Courts have held that in the context of bankruptcy matters, "not only formally named parties, but all participants in the bankruptcy proceedings are barred by res judicata from asserting matters they could have raised in the bankruptcy proceedings." In re Micro-Time Management Sys., Inc., 983 F.2d 1067 (6th Cir. 1993). Indeed, "creditors . . . must also be considered parties for res judicata purposes." Sanders Confectionary Prods., Inc., 973 F.2d at 480. In this case, Gourmet was the debtor in the bankruptcy proceeding and Gourmet identified Groupwell as a creditor in its Schedule F. (See Am. Schedule F [DN 90-5] 8 (identifying Groupwell as an unsecured creditor owed $509,604.86).) As Gourmet's creditor, Groupwell qualifies as a party for res judicata purposes. Since both Gourmet and Groupwell qualify as parties, the Court finds that the second element of res judicata is met.[4]

### 3.      Identity of Issues Between Prior Judgment and Instant Suit

Groupwell asserts that the final element of res judicata is present because there is an identity of causes of action and, thus, an identity of issues between the prior bankruptcy case and the instant lawsuit. According to Groupwell, there is an identity of causes of action because Gourmet's claims could have been asserted in the bankruptcy proceeding. Gourmet counters that the final element of res judicata cannot be met on the facts of this case because Gourmet lacked the requisite information

---

[3]Gourmet does not dispute whether the confirmation order is a final judgment.
[4]Gourmet does not dispute whether there is identity of the parties.

to bring its claims against Groupwell at the time of the bankruptcy proceeding. Gourmet additionally counters that its claims should not be barred because Gourmet adequately reserved them in its bankruptcy documents. For the following reasons, the Court agrees with Groupwell.

**Same Core of Operative Facts**

The Sixth Circuit has held that there is an identity of causes of action if "the claims arose out of the same transaction or series of transactions" or if they "arose out of the same core of operative facts." Browning, 283 F.3d at 773–74. In this case, Gourmet argues that there is no identity because the bankruptcy "arose due to Gourmet's inability to meet its operational cash flow requirements" and its current claims arose due to Groupwell's fraud. (See Gourmet's Mem. in Supp. of its Resp. to Pl.'s 3d Mot. for Partial Summ. J. [DN 92] 12.) However, the Court disagrees and finds that Gourmet's claims clearly arose out of the same core of operative facts as Gourmet's bankruptcy.

As a general rule, there is an identity of causes of action between an earlier bankruptcy case and later litigation when the debtor claims that its creditor's actions contributed to its bankruptcy. See Browning, 283 F.3d at 774 (noting that because "NW's claims against SSD allege that SSD's representation of Levy . . . and the resulting litigation and settlement contributed to Nationwise's bankruptcy, the current claims against SSD 'arise out of the same transaction,' or 'the same core of operative facts' as the Nationwise bankruptcy proceeding"); Sure-Snap Corp. v. State St. Bank & Trust Co., 948 F.2d 869, 875 (2d Cir. 1991) (holding that there was an identity of claims between an earlier bankruptcy proceeding and a post-confirmation claim by the debtor that alleged that the actions of one of its creditors "forced [the debtor] into bankruptcy"). In this case, in Gourmet's disclosure statement regarding its reorganization, Gourmet stated that the Bexar County suit against Kenneth Sliz was one of the reasons it filed bankruptcy, (see Disclosure Statement [DN 90-7] 4–5),

and Gourmet's claims against Groupwell alleging fraud and conspiracy are based upon the same factual basis as the claims that Sliz brought in that lawsuit. Thus, the Court finds that the transactions between Gourmet and Groupwell contributed to Gourmet's bankruptcy filing. The claims arose out of the same core of operative facts and there is an identity of causes of action.

The Court's conclusion that there is an identity of causes of action is supported by the fact that Gourmet's claims could have been raised in the bankruptcy case under the bankruptcy court's limited jurisdiction. See Browning, 283 F.3d at 773. Under 28 U.S.C. § 157(c)(1), a bankruptcy court has jurisdiction over proceedings that are "related to a case under title 11," and a claim is considered to be "related to" a bankruptcy if "the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy." Id. at 773 (quoting Sanders Confectionery Prods. Inc., 973 F.2d at 482); see also In re Dow Corning Corp., 86 F.3d 482, 489 (6th Cir. 1996) (noting that a claim is related to a bankruptcy proceeding if it would have affected the debtor's rights or liabilities). In the present case, the Court finds that Gourmet's claims are related to the bankruptcy proceeding because if they had been brought during that proceeding, any recovery would have represented an asset, available for distribution to Gourmet's creditors and shareholders. A similar result was reached in Browning, 283 F.3d at 773. Thus, the Court finds that the final element of res judicata is present. As such, it must grant Groupwell's motion unless: (1) Groupwell is barred from asserting res judicata under the fraudulent concealment doctrine; or (2) Gourmet adequately reserved its claims against Groupwell in its bankruptcy documents.

**Fraudulent Concealment**

Gourmet states that Groupwell cannot invoke res judicata, as the doctrine "cannot be asserted 'to cut off a cause of action before it accrues.'" Watts v. K, S & H, 957 S.W.2d 233 (Ky. 1997).

Kentucky law provides that a cause of action accrues when one discovers that a wrong has been committed. See Conway v. Huff, 644 S.W.2d 333, 334 (Ky. 1982) (noting that a cause of action for legal malpractice accrued when the plaintiff was informed that she was inadequately represented by another). According to Gourmet, at the time of the bankruptcy, its cause of action against Groupwell had not accrued because it did not know, and could not have known through exercising reasonable diligence, of its injury caused by Groupwell. (Mem. in Supp. [DN 92] 10.) Therefore, Gourmet asserts that Groupwell cannot rely on res judicata to cut off its claims.

The Court finds that Gourmet's fraudulent concealment argument fails. K.R.S. § 413.130(3) states that an action for fraud does not accrue until the fraud is discovered. Kentucky cases support this view. See Dycus v. Dycus, 175 S.W.2d 997, 998 (Ky. 1943) (noting that if one injured by fraud is apprised of that fact at the time it is perpetrated, he must bring his action at that time); Thomas v. Fidelity & Cas. Co. of N.Y., 80 S.W.2d 8, 10 (Ky. 1935) (noting that the statute of limitations does not begin to run until the discovery of fraud or until the defrauded party has notice of facts sufficient to put him on inquiry).  Here, the Court finds that Gourmet's cause of action against Groupwell had accrued by the time of the bankruptcy. More specifically, the Court finds that Gourmet had notice of facts sufficient to put it on inquiry of Groupwell's fraud as of 2007, with Sliz's allegations in the Bexar County lawsuit. Thus, the Court holds that Groupwell can assert res judicata in this case.

The Court's decision that Gourmet had notice of facts sufficient to put it on inquiry is largely based on the fact that Gourmet investigated the allegations of Groupwell's fraud in 2007, at that time that Sliz's allegations were made. William Patterson, Gourmet's Chief Restructuring Officer in the bankruptcy, testified that he reviewed the pleadings in the Bexar County lawsuit, which included

the allegations that Sliz asserted as to the scheme between the Scullys and Groupwell. (Dep. of William R. Patterson [DN 104-1] 37.) Patterson further testified that he knew that Sliz alleged a scam where Groupwell was overcharging Gourmet for shrimp and sending part of that overcharge to the Scullys. (Id. at 50.) Patterson and Carol Jendrzey, the attorney representing Gourmet in its bankruptcy, met with Sliz and his attorneys to discuss his allegations. Patterson and Jendrzey also met with the Scullys and their attorneys. (Id. at 50–51.) Thus, at the time of the bankruptcy case, Gourmet had investigated and was clearly aware of the allegations of an improper relationship between Groupwell and the Scullys. Accordingly, it had notice of facts sufficient to put it on inquiry of the fraud.

Gourmet contends that it did not have notice of facts sufficient to put it on inquiry of the fraud since the Scullys' indictment was not unsealed until August 4, 2010 and their superseding indictment was not unsealed until November 17, 2010. (See Indictment [DN 44-2]; Superseding Indictment [DN 59-6].) According to Gourmet, the indictments were the "smoking guns" describing the fraudulent relationship between the Scullys and Groupwell, and before they were unsealed, Gourmet "did not have, and could not have discovered, any of the facts alleged therein." (Sur-Reply to Pl.'s 3d Mot. for Partial Summ. J. [DN 98] 1–2.) In this regard, Gourmet highlights that the indictments charged the Scullys with using Groupwell and other companies "as intermediaries between Gourmet Express to inflate the cost of shrimp and other ingredients paid by Gourmet by anywhere from 10¢ to 95¢ per pound." (Superseding Indictment [DN 59-6] 4.) Gourmet also highlights that the indictments state that the Scullys "maintained a secret set of books and records detailing the actual purchase price paid by Gourmet Express for its imported products and the inflated amounts [they] caused Gourmet Express to pay for the imported products." (Id. at 5.)

10

However, the Court is of the opinion that Gourmet's cause of action had accrued before the conclusion of the bankruptcy, as Gourmet had enough knowledge regarding Groupwell's fraud to bring its claims at that time. Indeed, any concealment by Groupwell did not prevent Gourmet from asserting its claims because at the time of the bankruptcy, the Bexar County lawsuit existed and contained the same allegations later asserted in Gourmet's counterclaims, albeit with less specificity than the indictments. In this regard, the Court finds Browning persuasive. There, the Sixth Circuit held that any concealment did not prevent NW from asserting its claims because at the time of the bankruptcy, a complaint existed that contained the same allegations later asserted. 283 F.3d at 771.

The Court also finds guidance from Livingston v. ITT Consumer Financial Corp., 795 F. Supp. 921 (D. Minn. 1992). There, the court refused to apply the fraudulent concealment exception to res judicata when the plaintiff was aware that she had a potential claim against the defendants during the pendency of her bankruptcy, even though it was based solely on allegations at the time. Id. at 924–25. In reaching this conclusion, the court noted that the plaintiff had both an opportunity and obligation to investigate the matter and assert the claim in her bankruptcy. Id. at 925. Similarly, the Court finds persuasive guidance from Cummins, Inc. v. TAS Distributing Co., Inc., 676 F. Supp. 2d 701 (C.D. Ill. 2009). In that case, the court held that the misrepresentation exception did not apply because information was available to the plaintiff that should have put it on notice of its claim. Id. at 715–16. In this case, Gourmet clearly knew that it had potential claims against Groupwell during the bankruptcy, as evidenced by its investigation of Groupwell. Thus, Gourmet is similar to the plaintiffs in Livingston and Cummins, Inc. Accordingly, the Court refuses to apply the fraudulent concealment exception to res judicata.

11

**Reservation of Claims**

As a general rule, the doctrine of res judicata does not bar claims that are adequately reserved in bankruptcy proceedings. This rule is confirmed by 11 U.S.C. § 1123(b)(3)(B), which provides:

> Subject to subjection (a) of this section, a plan may–
> > (3) provide for–
> > > (A) the settlement or adjustment of any claim or interest belonging to the debtor or to the estate; or
> > > (B) the retention and enforcement by the debtor, by the trustee, or by a representative of the estate appointed for such purpose, of any such claim or interest . . . .

Groupwell asserts that Gourmet did not adequately reserve its claims in the bankruptcy proceedings. Gourmet counters that it did adequately reserve its claims. The Court agrees with Groupwell.

At the outset, the Court notes that Gourmet's attempts to reserve its claims can be found in Gourmet's disclosure statement and reorganization plan, as well as in the bankruptcy court's order confirming the reorganization plan. The disclosure statement states as follows:

> Except as released by the Plan or Final Order, [Gourmet] . . . may commence or advance any Litigation following the Effective Date . . . .

> Unless Litigation is expressly waived, relinquished, released, compromised or settled in the Plan or in a Final Order or the release, all rights with respect to such Litigation are reserved and transferred to [Gourmet] to pursue such Litigation.

(Disclosure Statement [DN 90-8] 24.) This language was also included in Gourmet's reorganization plan. (Plan [DN 90-9] 16.) Additionally, Gourmet's reorganization plan provides:

> Except as released by this Plan upon the Effective Date or pursuant to other order of this Court, all claims and causes of action transferred to [Gourmet] . . . shall vest in [Gourmet] . . . and [Gourmet] . . . shall retain all rights, claims, and causes of action that belonged to the respective Debtors.

(Id. at 12.) The confirmation order includes identical language. (Order [DN 90-10] 10.) It also adds:

> Accordingly, no doctrine of preclusion, including without limitation, the doctrines of *res judicata*, collateral estoppel, issue preclusion, claim preclusion, estoppel

12

> (judicial, equitable or otherwise) or laches shall apply to any cause of action upon or after the Effective Date of the Plan. The Plan does not and is not intended to release any such rights of action or avoidance actions. All such rights and rights of action are specifically reserved in favor of [Gourmet] . . . regardless of whether the Debtors identified the payments or transfers in their statement of financial affairs.

(Id.) In Browning, the Sixth Circuit held that "a general reservation of rights does not suffice to avoid res judicata." 283 F.3d at 774. In so doing, it found that a broad, all-encompassing reservation[5] did not reserve the plaintiff's malpractice claims, as it did not specifically mention those claims. Id. The Court noted that the reservation neither named the party against whom the claims were to be asserted nor stated the factual basis for the reserved claims. Id. at 775.

Groupwell highlights that Gourmet never named Groupwell in any of its reservation clauses, nor did it state the factual basis for any claim against Groupwell. Therefore, according to Groupwell, Gourmet has not adequately reserved the claims that it asserts against Groupwell in this lawsuit. The Court agrees. By failing to name Groupwell in the reservation clauses and failing to state the factual basis for any claim against Groupwell, Gourmet failed to adequately reserve any claims against it.

The Court's conclusion that Gourmet failed to properly reserve its claims against Groupwell finds support in other case law. For example, the case of In re Crowley, Milner & Co., 299 B.R. 830 (Bankr. E.D. Mich. 2003), is persuasive. There, the reservation of rights clause reserved to various creditors' committees the right to pursue the debtors' "claims or causes of action against any person . . . ." Id. at 847. After the bankruptcy plan was confirmed, the committees sued some of the debtors' officers, alleging that they breached their fiduciary duties. Id. at 848. The court found, however, that

---

[5]The specific language in the disclosure statement's reservation stated as follows: "In accordance with section 1123(b) of the Bankruptcy Code, the Company shall retain and may enforce any claims, rights, and causes of action that the Debtor or its bankruptcy estate may hold against any person or entity, including, without limitation, claims and causes of action arising under sections 542, 543, 544, 547, 548, 550, or 553 of the Bankruptcy Code." Browning, 283 F.3d at 769.

13

the committees' claims were barred by res judicata and that the debtors had not effectively reserved their claims. Id. at 849. Relying primarily on Browning, the Court noted that the debtors' plan did not specifically name any officer or director, nor did it describe any specific causes of action or a factual basis for any claims that might exist against any officer or director. Id. at 850. The lack of any meaningful information in the bankruptcy documents "regarding the nature, factual basis, or value of any claims" reinforced the court's conclusion that the reservation was insufficient. Id. at 852. Likewise, in the instant case, the bankruptcy documents do not specifically name Groupwell or state the factual basis for any claim against it. Gourmet's boilerplate reservation is thus ineffectual.

The language used in Gourmet's attempted reservation is inapposite to the type of language that courts have found to be adequate. For example, in In re Regional Diagnostics, LLC, 372 B.R. 3 (Bankr. N.D. Ohio 2007), the court found that the plaintiff's claims against directors and officers of the debtor corporation were adequately reserved. Id. at 13. In so doing, the court noted that while the plan and the confirmation order merely included blanket reservations of rights, the disclosure statement additionally contained the following specific language:

> The Committee has delivered to Debtors a letter that serves as a written demand or notice under the Debtors' applicable insurance policy or policies of claims against the Debtors' directors and officers. A copy of the notice is attached hereto as Appendix D. The Term Sheet provides that any such claims are preserved for the benefit of Debtors' unsecured Creditors.

Id. at 11. Appendix D went on to specify claims against the debtors' officers and directors for breach of fiduciary duty, self-dealing, waste, and spoilation of corporate assets. It also specified the conduct supporting those claims and alleged that the damages were not less than $20 million. Id. at 11–12.

The court, after considering the disclosure statement, held that the plaintiff's claims were

adequately reserved. This is because the disclosure statement provided information about the class of persons against whom claims could be asserted, the factual allegations of wrongdoing, and the anticipated damages for the claims. *In re* Reg'l Diagnostics, LLC, 372 B.R. at 12. But Gourmet's disclosure statement and related bankruptcy filings lack any of this specificity. Similar conclusions have been reached by other courts. See, *e.g.*, *In re* SmarTalk Teleservs., Inc. Sec. Litig., 487 F. Supp. 2d 914 (S.D. Ohio 2007) (relying on the disclosure statement's specific language to hold that the plaintiff's claims were adequately and sufficiently reserved).

To argue that it has properly reserved its claims, Gourmet relies on the confirmation order's language that "no doctrine of preclusion, including without limitation, the doctrine[] of *res judicata* . . . shall apply to any cause of action . . . ."  (Order [DN 90-10] 10.) According to Gourmet, this language operates as a categorical reservation against res judicata and is sufficient to reserve its claims. In support, Gourmet highlights that post-Browning cases have held that a "[c]ategorical reservation can effectively avoid the res judicata bar." See *In re* Antioch Co., 456 B.R. 791, 831 (Bankr. S.D. Ohio 2011) (report & recomm. adopted, 2011 WL 3664564 (S.D. Ohio Aug. 12, 2011)). As an additional matter, Gourmet asserts that the reservation comports with legislative intent, allowing "creditors to identify and evaluate the assets potentially available for distribution." See *In re* Pen Holdings, Inc., 316 B.R. 495, 904 (Bankr. M.D. Tenn. 2004); see also *In re* Antioch Co., 456 B.R. at 826 (noting that the focus must be "whether the language enables the court, creditors, and other parties to the bankruptcy to value the claims in relation to the disposition of the debtor's bankruptcy estate"). Finally, Gourmet suggests that holding the reservation sufficient in this case will not undermine the creditors' ability to identify available assets since all its creditors were paid through the bankruptcy. However, the Court finds these arguments to be without merit.

15

First, the Court finds that the confirmation order's language does not constitute a categorical reservation. In *In re* Antioch Co., the court held that "plan provisions identifying causes of action by type or category are not mere blanket reservations" and that these reservations "can effectively avoid the res judicata bar." 456 B.R. at 831. However, in that case, the debtor attached a schedule to its reorganization plan that specifically identified almost all of the parties and the causes of action asserted in the subsequent case. Id. at 829–30. The court found that this schedule was not a general reservation like the one in Browning because the language was significantly more specific. Id. By contrast, in this case, specificity is lacking. Gourmet's bankruptcy documents only contain a blanket reservation. They do not contain a categorical reservation because Gourmet does not identify causes of action against Groupwell by type or category. Mere blanket reservations cannot be given effect.

Along these same lines, the Court notes that a contrary conclusion is not warranted due to the language referencing res judicata in Gourmet's confirmation order. In the case of *In re* Antioch Co., the confirmation order included the following similar language:

> The Debtors, with the consent of the Creditors' Committee, have used their best efforts to identify Litigation Claims and Business Litigation Claims, which are set forth on Plan Schedule 10.5. **Nothing herein or in the Plan, however, shall operate as res judicata against the Reorganized Debtors** in prosecuting Business Litigation Claims or against the Litigation Trustee in prosecuting Litigation Claims.

456 B.R. at 828 (emphasis added). Directly after quoting this provision, the court noted that the "latter statement does not preclude the court from applying res judicata if the reservation is not sufficient." Id. Thus, the Court finds that Gourmet's broad, blanket reservation remains ineffectual despite its specific reference to the res judicata doctrine.

Second, the Court finds that to the extent Gourmet relies on the case of *In re* Pen Holdings, Inc., its reliance is unwarranted. In that case, the court analyzed subsequently asserted preference

16

claims under Chapter 5 of the Bankruptcy Code and found that the claims were sufficiently reserved since the debtors listed the potential preferential transfers, identified the debtors' assets as "potential avoidance actions," and specifically reserved avoidance actions in the bankruptcy plan. 316 B.R. at 497–98. In reaching its conclusion, the court distinguished its holding from Browning because it involved preference claims, which are native to a bankruptcy case. Id. at 504–05. The present case, however, involves claims of fraud and civil conspiracy. These are clearly not preference claims. Accordingly, the In re Pen Holdings, Inc. decision does not alter the Court's analysis. See also IBM Se. Emps. Fed. Credit Union v. Collins, 2008 WL 4279554, at *12 (M.D. Tenn. Sept. 17, 2008) (noting that the test applied in In re Pen Holdings, Inc. is limited in scope).

Third, the Court finds that Gourmet is incorrect to argue that Browning should be disregarded because its creditors were paid in full. Gourmet cites no authority for this position, and as Groupwell correctly notes, adopting such a position would ignore the important policy of complete disclosure. The specificity requirement "increases certainty, discourages multiple litigation, and conserves judicial resources." In re G-P Plastics, Inc., 320 B.R. 861, 869 (E.D. Mich. 2005). This fact remains true regardless of whether the debtor's creditors were paid in full. In sum, Gourmet's arguments are without merit. Gourmet simply did not adequately reserve its claims in the bankruptcy proceedings.   Accordingly, Groupwell's motion for partial summary judgment is **GRANTED**.

### B.   Judicial Estoppel

The doctrine of judicial estoppel is often applied "to prohibit a party from taking inconsistent positions in judicial proceedings." Hisle v. Lexington-Fayette Urban Cnty. Gov't, 258 S.W.3d 422, 434 (Ky. App. 2008). The doctrine is an "equitable principle intended to protect the integrity of the

judicial process." Id. at 435. Under Kentucky law, although there is "no absolute general formula for this principle, several factors have been recognized such as: (1) whether the party's later position is clearly inconsistent with its earlier position; (2) whether the party succeeded in persuading a court to accept the earlier position; and (3) whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped." Id. at 434–35. Groupwell asserts that Gourmet never identified as assets in its bankruptcy the claims that it now asserts in its case. According to Groupwell, since Gourmet failed to disclose these claims, it should be estopped from now asserting them. Gourmet counters that the doctrine of judicial estoppel does not apply. However, since the Court has found that Gourmet's claims are barred under the doctrine of res judicata, it declines to address the parties' arguments as to this issue.

### GOURMET'S MOTION FOR RELIEF PURSUANT TO FED. R. CIV. P. 56(D) [DN 99]

In its motion for relief pursuant to Fed. R. Civ. P. 56(d), Gourmet requests that the Court deny Groupwell's motion for partial summary judgment or, in the alternative, hold its resolution of the matter in abeyance until the first trial's conclusion, after an appropriate period of discovery on matters to be resolved in the second trial. (See Def.'s Mot. for Relief Pursuant to Fed. R. Civ. P. 56(d) [DN 99] 1.) As grounds for this motion, Gourmet asserts that it has been afforded insufficient opportunity to obtain discovery regarding its claim that Groupwell actively concealed information from it and that it, thus, cannot reasonably or sufficiently present a defense to the Court. (Mem. in Supp. of Mot. for Denial or Continuance [DN 99-1] 6.) Groupwell counters that Gourmet does not need to conduct additional discovery, as Groupwell has eliminated the possibility of any fact issue by admitting every allegation that is material and relevant to Groupwell's pending summary judgment motion. (Resp. to Mot. for Denial or Continuance of Def. [DN 100] 1.) According to

18

Groupwell, even after making these admissions, it is entitled to partial summary judgment. (Id.)

"When a motion for summary judgment is filed, the party opposing the motion may, by affidavit, explain why he is unable to present facts essential to justify the party's opposition to the motion." Summers v. Leis, 368 F.3d 881, 887 (6th Cir. 2004). The basis for this rule is Fed. R. Civ. P. 56(d), which provides:

> If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may:
> (1) defer considering the motion or deny it;
> (2) allow time to obtain affidavits or declarations or to take discovery; or
> (3) issue any other appropriate order.

Fed. R. Civ. P. 56(d). The Sixth Circuit has identified five factors that are relevant to a party's request for additional discovery under Rule 56(d): "(1) when the party seeking discovery learned of the issue that is the subject of the desired discovery; (2) whether the desired discovery would change the ruling; (3) how long the discovery period lasted; (4) whether the party seeking discovery was dilatory in its discovery efforts; and (5) whether the non-moving party was responsive to discovery requests." Plott v. Gen. Motors Corp., 7 F.3d 1190, 1196–97 (6th Cir. 1995). It is well-settled in the Sixth Circuit that "when the parties have no opportunity for discovery . . . ruling on a summary judgment motion is likely to be an abuse of discretion." CenTra, Inc. v. Estrin, 538 F.3d 402, 420 (6th Cir. 2008) (citing Ball v. Union Carbide Corp., 385 F.3d 713, 719 (6th Cir. 2004)).

The Court recognizes that it has previously stayed Groupwell's obligations to respond to discovery regarding Gourmet's allegations of fraud. (Order [DN 83]). However, for purposes of this summary judgment motion, Groupwell has conceded that it fraudulently represented to Gourmet that it was independent of the Scullys and that it concealed from Gourmet its improper relationship with them. Thus, the Court is persuaded by Groupwell's argument that further discovery is not essential

to Gourmet's opposition to Groupwell's summary judgment motion. As aptly put by Groupwell, any concealment on its part does not defeat its summary judgment motion because the fact remains that Gourmet knew about the fraud from Kenneth Sliz's allegations in the Bexar County lawsuit.

The Court notes that Gourmet asserts it must conduct discovery to demonstrate its reliance upon Groupwell's concealment. Specifically, Gourmet asserts that it must be given an opportunity to depose William Romney, an individual who was asked to investigate whether Groupwell charged Gourmet a fair price. (Reply in Supp. of its Mot. for Denial or Continuance [DN 102] 2.) According to Gourmet, Romney's testimony may reveal that he relied upon misrepresentations "in order to report back to Patterson that Groupwell was charging Gourmet a fair price." (Id.) Thus, Gourmet would be able to prove that there was a causal link between the fraudulent concealment and the party's failure to file suit. See Blanton v. Cooper Indus., Inc., 99 F. Supp. 2d 797, 803 (E.D. Ky. 2000) (noting that the defendant's conduct must be the reason that the plaintiff did not proceed).

The Court finds, however, that Gourmet's argument is off-point. The Court has found that Gourmet knew about the fraud from Sliz and his allegations in the Bexar County lawsuit. Thus, the fraudulent concealment exception does not apply and whether there was a causal link between the concealment and Gourmet's failure to file its claims is irrelevant. Gourmet has simply not shown how additional discovery would allow it to challenge Groupwell's res judicata argument.

In sum, while Gourmet's submitted affidavit refers generally to the "need" to discover issues related to the source and amount paid to Groupwell prior to and during the bankruptcy proceedings, what Groupwell did with the proceeds paid by Gourmet prior to and during the bankruptcy, and the substance of Groupwell's misrepresentations, Gourmet fails to state with "exactly how [it] expect[s] those materials would help [it] in opposing summary judgment." Summers, 368 F.3d at 887 (citing

20

Simmons Oil Corp. v. Tesoro Petroleum Corp., 86 F.3d 1138, 1144 (Fed. Cir. 1996)). The Court

thus finds that further discovery is not necessary. Groupwell's motion for partial summary judgment

is not premature. Gourmet's motion for relief under Fed. R. Civ. P. 56(d) is **DENIED**.

### IV. CONCLUSION

For the reasons set forth above, **IT IS HEREBY ORDERED** that Plaintiff's Third Motion

for Partial Summary Judgment [DN 90] is **GRANTED**.

**IT IS FURTHER ORDERED** that Defendant's Motion for Relief Pursuant to Fed. R. Civ.

P. 56(d) [DN 99] is **DENIED**.

**Joseph H. McKinley, Jr., Chief Judge**
**United States District Court**

January 24, 2013

cc: counsel of record

21